UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MANMOHAN UTTARWAR,

|  |  |  |
|---|---|---|

                                    *Plaintiff*,                              Docket No.:22-cv-8139

                                                                    **COMPLAINT**

                    -against-                                    **JURY TRIAL DEMAND**

LAZARD ASSET MANAGEMENT LLC, and
KERI TUSA,

                                    *Defendants*.
-----------------------------------------------------------X

     Plaintiff, Manmohan Uttarwar ("Plaintiff"), by and through his attorneys, Ballon Stoll P.C.,
complaining of Defendants, Lazard Asset Management LLC ("LAM"), and Keri Tusa ("Tusa"),
(collectively, "Defendants"), alleges upon personal knowledge, unless where information and
belief is stated, the following:

     1.     This is an action brought for substantial compensatory damages and reasonable
counsel fees premised upon the Defendants' continuing acts of unlawful discrimination and
harassment based on Plaintiff's religion, race, national origin, familial status, caregiver status, and
Plaintiff's wife's pregnant and/or postpartum condition(s), as well as retaliation for complaining
of discrimination and going on statutory parental leave in violation of the Family and Medical
Leave Act of 1993 ("FMLA")*,* 29 U.S.C. 2601 *et seq.*, the Executive Law of the State of New
York, New York State Human Rights Law ("Executive Law") § 296, *et seq.*, and the
Administrative Code of the City of New York, New York City Human Rights Law
("Administrative Code"), § 8-101, *et seq.*

**JURISDICTION AND VENUE**

2.      This court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a), and supplemental jurisdiction over the State and City law claims pursuant to 28 U.S.C. § 1367.

3.      As the Southern District is the district where a substantial part of the events giving rise to the claims occurred, venue is proper within this district pursuant to 28 U.S.C. § 1391(a)(2).

**THE PARTIES**

*Plaintiff*

4.      Plaintiff is originally from India.

5.      Plaintiff is a member of the Hindu religion.

6.      Plaintiff is of Asian Indian race.

7.      Plaintiff is a "person" within the meaning of Executive Law § 292(1), and within the meaning of Administrative Code § 8-102(1).

8.      At all relevant times herein, Plaintiff was an "employee" of LAM within the meaning of Executive Law § 292(6) and Administrative Code § 8-102.

9.      Plaintiff was an "eligible employee" of LAM as defined in 29 U.S.C. § 2611(2). When Plaintiff requested FMLA leave as set forth herein, Plaintiff had been employed by LAM for at least 12 months and for over 1,250 hours of service with LAM during the previous 12-month period.

10.     When Plaintiff went on FMLA leave, his wife had just given birth and/or was expected to give birth to their child and was thus pregnant and/or postpartum.

11.     Pregnancy is a disability within the meaning of Administrative Code § 8-102(16). Plaintiff's wife's pregnancy was particularly disabling as Plaintiff's wife has a blood related

precondition called antiphospholipid syndrome, a condition in which the immune system mistakenly creates antibodies that attack tissues in the body. Upon information and belief, these antibodies can cause blood clots in arteries and veins. For these reasons, Plaintiff's wife's pregnancy upon which Plaintiff took FMLA parental leave from LAM was identified as a high risk pregnancy.

12.     Postpartum is a disability within the meaning of Administrative Code § 8-102(16). Upon information and belief, postpartum causes impairments of systems of the body; including, *inter alia*, the reproductive, endocrine, genito-urinary, skin, and cardiovascular systems. Upon further information and belief, examples of such impairments are excessive bleeding, impaired vision, rapid heartbeat, severe headache, extreme swelling, difficulty breathing, and severe abdominal pain.

13.     Upon information and belief, postpartum causes mental or psychological impairments including, *inter alia*, depression and anxiety.

14.     Upon information and belief, when Plaintiff requested FMLA parental leave from Defendants, he made Defendants aware of and/or perceive that Plaintiff was in a relationship and/or association with a pregnant person and/or a person suffering from—or who would soon be suffering—from at least one of the aforementioned physical and/or mental and/or psychological impairments caused by postpartum, and/or from antiphospholipid syndrome.

15.     Upon requesting/taking FMLA parental leave Plaintiff made Defendants aware that he was/would be while on leave an expectant parent under Executive Law §§ 292(26), 296(1)(A), and a "caregiver" within the meaning of Administrative Code §§ 8-102, and 8-107. Plaintiff's pregnant wife would be delivering Plaintiff's child, and both would be/were dependent on Plaintiff to meet the needs of daily living and/or to provide medical care. Plaintiff would be/was responsible

for, *inter alia*, childcare, scheduling and transporting to doctor's appointments and doing other necessary housekeeping chores for his pregnant/postpartum wife and/or child.

16.     Plaintiff resides in Essex County, Newark, New Jersey.

**Defendants**

17.     LAM is a for-profit corporation organized in the State of Delaware and is registered in New York State to do business. Defendant has a registered agent, CT Corporation System, with an address at 28 Liberty Street, New York, New York 10005. At all relevant times, LAM employed Plaintiff at its office in New York County, State of New York as a Senior Vice President of LAM's Revenue Generating Front Office ("Front Office SVP").

18.     LAM is an "employer" within the meaning of Executive Law § 292(5), the Administrative Code § 8-102, and 29 U.S.C. § 2611(4)(A). Upon information and belief, LAM employs over nine hundred (900) employees globally and employs hundreds of employees in New York.

19.     Approximately one (1) month after Plaintiff was hired by LAM and at all relevant times thereafter, Tusa was employed by LAM as Director and Head of Trading Technology.

20.     Approximately one (1) month after Plaintiff was hired by LAM and at all relevant times thereafter, Tusa was Plaintiff's direct supervisor.

21.     Upon information and belief, approximately one (1) month after Plaintiff was hired by LAM and at all relevant times thereafter, Tusa was a key decision-maker as to personnel and staffing matters, including but not limited to termination of employees.

**JURY DEMAND**

22.     Plaintiff hereby demands a trial by jury in this action.

**FACTS**

23.     Plaintiff began working for LAM on or about May 14, 2018 as a Front Office SVP.

24.     For the first month of his employment at LAM, Plaintiff temporarily reported to another Front Office SVP, John LaBadia ("LaBadia").

25.     After the first month of Plaintiff's employment at LAM, on or about June 15, 2018, Tusa was hired to be Plaintiff's immediate supervisor and to report directly to the Managing Director, Chief Technology Officer, and Head of Technology (the "CTO").

26.     Tusa was assigned to directly supervise two (2) Front Office SVPs: Plaintiff and LaBadia.

27.     From that point on, Plaintiff and LaBadia held virtually identical roles at LAM as Front Office SVPs reporting equally to Tusa.

28.     LaBadia is Caucasian, has family roots originating in Ireland, and—upon information and belief—in Europe, and is a member of the Christian religion.

29.     Tusa is Caucasian, and upon information and belief, has family roots originating in Europe.

30.     During Plaintiff's time working for LAM, LaBadia never went on FMLA parental leave.

31.     At all relevant times, Plaintiff and LaBadia held the same job positions—Front Office SVP.

32.     After Tusa was hired in June of 2018, Plaintiff and LaBadia reported to the same supervisors: Tusa directly, and the CTO above Tusa.

33.     Upon information and belief, after Tusa was hired in June of 2018, Plaintiff and LaBadia were officially subject to the same disciplinary standards.

34.     Upon information and belief, after Tusa was hired in June of 2018, Plaintiff and LaBadia were officially subject to the same performance requirements,

35.     Upon information and belief, after Tusa was hired in June of 2018, Plaintiff and LaBadia were officially subject to the same type of job responsibilities.

36.     Despite holding a virtually identical role in LAM as LaBadia, after Tusa was hired in June 2018, Plaintiff was astronomically more qualified and productive than LaBadia.

37.     Plaintiff had multiple Master's Degrees relating to software and business while, upon information and belief, LaBadia had only a Bachelor's Degree.

38.     Plaintiff had multiple industry-recognized certifications in specific technologies and capital market-centric fields while LaBadia had none.

39.     Plaintiff possessed hands-on-coder skills while LaBadia did not. This was a key skillset for a Front Office SVP that headed technology departments. The more hands-on-coder skills a Front Office SVP possessed, the better they were able to internalize clients' needs, articulate and rectify issues, and streamline day-to-day operations and business problems related to information technology ("IT"). Moreover, the entire firm's infrastructure was IT based and so all performance and execution happened because of IT and coding.

40.     Plaintiff had pertinent experience in a broader portion of the industry than LaBadia, as Plaintiff had worked for, *inter alia*, buy-side firms, sell-side firms *and* sell-side broker-dealers, while LaBadia had *only* worked for buy-side firms and *not* sell-side firms and broker-dealers..

41.     Plaintiff had specialized technical expertise in a broader array of capital markets fields than LaBadia: Plaintiff was an expert in Fixed Income, Foreign Exchange, Alternative Investments, and Equities; whereas LaBadia only possessed more business and some technical knowledge in Equities.

42.     Plaintiff delivered substantially more projects than LaBadia despite LaBadia possessing double the amount of supporting staff as Plaintiff.

43.     Plaintiff managed eight (8) trading desk business units while LaBadia managed only four (4) trading desk business units.

44.     Plaintiff managed deliverables across more than a hundred (100) portfolio managers, traders, and analysts; while LaBadia managed less than twenty (20).

45.     Upon information and belief, immediately after Tusa was hired to be Plaintiff's and LaBadia's direct supervisor, Tusa became aware of Plaintiff's race of Asian Indian and LaBadia's race of Caucasian because, *inter alia*, Plaintiff's and LaBadia's physical appearance, including, *inter alia*, skin color, demonstrated they were of Asian Indian and Caucasion race, respectively.

46.     Shortly after Tusa was hired to be Plaintiff's and LaBadia's direct supervisor, Plaintiff, Tusa, and LaBadia engaged in a conversation wherein Plaintiff disclosed to Tusa that he was a member of the Hindu religion and originally from India, and wherein LaBadia disclosed to Tusa that he was a member of the Christian religion and had family roots originating in Ireland.

47.     Thereafter, Tusa began harassing Plaintiff and subjecting Plaintiff to inferior treatment compared to LaBadia.

48.     In December of 2018, Tusa issued Plaintiff a poor performance evaluation.

49.     This performance evaluation made no sense as Plaintiff had just received ample and global praise from numerous high-ranking LAM executives from multiple LAM divisions, and from Heads of Trading Desks who controlled the book of business worth billions of dollars and who were Plaintiff's internal clients, for successfully delivering LAM's Fixed Income Trading System migration from the Charles River System to the Bloomberg System. Likewise, Tusa had just received an email from the Managing Director of US Fixed Income, which expressed extreme

approval of Plaintiff's work performance. Likewise, Plaintiff had received abundant praise from clients that were stored in an LAM database, that Tusa should have referenced for her evaluation.

50.     In or about May of 2019, Tusa removed Plaintiff's quintessential subordinate—the Vice President of Plaintiff's department—from under Plaintiff's command. This deprived Plaintiff of a key resource of Plaintiff's team and severely inhibited Plaintiff's ability to manage a workload involving twice as many business trading desk units as LaBadia's despite LaBadia possessing approximately twice as many support staff as Plaintiff.

51.     Between approximately May and August of 2019, Tusa intentionally excluded Plaintiff from approximately twenty-nine (29) key executive meetings he was scheduled to attend.

52.     Approximately sixteen (16) of these meetings were "Lead Level Meetings" where the top executives of Plaintiff's department, including Front Office SVPs, would meet and exchange vital information for the management functions of each executive at the meeting, including for the Front Office SVPs.

53.     Tusa excluded Plaintiff from these Lead Level Meetings by lying to him about their date and time.

54.     LaBadia was not excluded from these Lead Level Meetings.

55.     Approximately thirteen (13) of the key executive meetings that Tusa excluded Plaintiff from were one-on-one meetings that Tusa was required to schedule with each SVP under her—including Front Office SVPs—to discuss vital information for the SVP's job functions.

56.     While Tusa consistently afforded LaBadia the benefit of these one-on-one meetings, Tusa canceled or perpetually pushed off approximately thirteen (13) out of approximately sixteen (16) of these meetings scheduled with Plaintiff between May and August

of 2019 and thereby denied Plaintiff the benefit afforded to LaBadia of these consistent one-on-one meetings and the vital information shared therein.

57.     By constantly excluding Plaintiff from these key executive meetings and denying Plaintiff the critical job information shared therein for months at a time, Tusa rendered Plaintiff's job exponentially more difficult, stressful, and demanding, and inhibited Plaintiff's ability to perform his job duties.

58.     Despite these extreme handicaps, Plaintiff still greatly outperformed LaBadia resulting in numerous reports from clients and peers about Plaintiff's excellent performance.

59.     In or about June of 2019, Plaintiff received another poor performance evaluation. This evaluation was based on false, and baseless criticism by Tusa and was otherwise contradicted by the rave reviews Plaintiff had been receiving from peers and clients for excellent performance. For example, Plaintiff had just received praise from the Managing Director of the Paris Portfolio, who had moved from Paris to New York to manage an Alternative Investment Portfolio Management Desk, for excellent performance and communication with the Alternative Investment Desk and traders for the 2019 year. Likewise, Plaintiff had received abundant praise from clients that were stored in an LAM database that Tusa should have referenced for Plaintiff's evaluation.

60.     Plaintiff submitted a detailed rebuttal to this June 2019 performance evaluation on LAM's performance evaluation system. The rebuttal detailed how Tusa's evaluation was false and baseless.

61.     In or about July of 2019, Defendants removed Plaintiff from the allocated private office for Front Office SVPs that Plaintiff shared with LaBadia, and forced Plaintiff to work on the general floor with other lower-ranking personnel including subordinates and developers. Not only was this humiliating and a devastating loss of prestige, but it also drastically increased the

difficulty of Plaintiff's job as Plaintiff was routinely required to discuss managerial-level classified matters over the phone within earshot of subordinate employees who were unauthorized to hear the content of these phone conversations, forcing Plaintiff to simultaneously communicate loud and clear enough to efficiently communicate with other management and quiet and discrete enough to maintain confidentiality.

62.    In or about July of 2019, after being moved to the general floor with the lower-ranking employees, Plaintiff complained verbally to the CTO that removing Plaintiff from his allocated SVP office was the latest of a pattern of discriminatory disparate treatment compared to LaBadia that Plaintiff had been receiving from Tusa.

63.    In or about July or August of 2019, Plaintiff met with Tusa, and Katelyn Kim: a Human Resources Representative. In this meeting, Plaintiff complained to Tusa and Kim that Tusa's false and baseless criticisms in Plaintiff's performance evaluation were discriminatory treatment.

64.    On or about August 16, 2019, Plaintiff requested and was approved to go on FMLA parental leave for the birth of his child. Pursuant to this request and approval, Plaintiff and Tusa filled out and signed an FMLA parental leave form with both signatures dated August 16, 2019. This form also stated, *inter alia*, ". . . *I am eligible for leave under the Family and Medical Leave Act ("FMLA") and my request for PL is approved. Both PL and FMLA will run concurrently.*" The period of Plaintiff's approved FMLA parental leave was from September 3, 2019 to October 29, 2019.

65.    Plaintiff provided copies of this FMLA parental leave form to Tusa and the CTO.

66.     Upon information and belief, Defendants were made aware that Plaintiff's wife would be or was pregnant and/or suffering from the symptoms of postpartum and/or antiphospholipid syndrome by Plaintiff's going on FMLA parental leave for the birth of his child.

67.     On September 25, 2019, while Plaintiff was still on FMLA parental leave, Plaintiff received a call from Tusa. On this call, Tusa told Plaintiff that Tusa was terminating Plaintiff on behalf of LAM.

68.     Upon information and belief, Plaintiff was terminated in retaliation for going on FMLA parental leave and for complaining to Defendants about the discrimination he was receiving in or about July and August of 2019, and to discriminate against Plaintiff based on his religion, national origin, and relationship/association with his pregnant/postpartum wife.

69.     The reason Defendants provided Plaintiff for his termination was that the LAM was executing a mass layoff. However, while Plaintiff was terminated, LaBadia was not.

70.     Upon information and belief, Plaintiff's being placed on the layoff list rather than LaBadia despite Plaintiff's substantially outperforming LaBadia and being substantially more qualified and productive than LaBadia, demonstrates that Plaintiff was terminated to discriminate against Plaintiff because of his religion, race, national origin, caregiver status, familial status, and his wife's pregnancy/postpartum, and to retaliate against Plaintiff for complaining of discrimination and for going on FMLA parental leave.

71.     Upon information and belief, Defendants' removing Plaintiff's key subordinate while allowing LaBadia to keep substantially more key subordinates; excluding Plaintiff from key executive meetings while allowing LaBadia the benefit of these meetings; issuing plaintiff baselessly poor performance evaluations; forcing Plaintiff to work in an area designated for inferior employees; continuous extreme bias against Plaintiff, and terminating Plaintiff were

11

examples of Defendants discriminating against Plaintiff and creating a hostile work environment for Plaintiff on the basis of his religion, race, and national origin.

## FIRST CAUSE OF ACTION
**(National Origin and Race Discrimination in violation of
Executive Law § 296, *et seq.* against All Defendants)**

72.     Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

73.     Defendants discriminated against Plaintiff based on his national origin and race in violation of Executive Law § 296, *et seq.*

74.     This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

75.     Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

76.     Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the 225-day tolling of the statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

77.     As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees.

## SECOND CAUSE OF ACTION
### (National Origin and Race Discrimination in violation of
### Administrative Code § 8-107, *et seq.* against All Defendants)

78.     Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

79.     Defendants discriminated against Plaintiff based on his national origin and race in violation of Administrative Code §8-107, *et seq.*

80.     This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

81.     Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

82.     Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the 225-day tolling of the statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

83.     As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees.

## THIRD CAUSE OF ACTION
### (Religious Discrimination in violation of Executive Law § 296,
### *et seq.* against All Defendants)

84.     Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

85.     Defendants discriminated against Plaintiff based on his religion in violation of Executive Law § 296, *et seq.*

86.     This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

87.     Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

88.     Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the 225-day tolling of the statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

89.     As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees.

### FOURTH CAUSE OF ACTION
### (Religious Discrimination in violation of Administrative Code § 8-107, *et seq.* against All Defendants)

90.     Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

91.     Defendants discriminated against Plaintiff based on his religion in violation of Administrative Code §8-107, *et seq.*

92.     This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

93.     Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

94.     Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the 225-day tolling of the statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

95.     As a result of the Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees.

**FIFTH CAUSE OF ACTION**
**(Disability Association Discrimination**
**in Violation of the Administrative Code §8-107, *et seq.***
**against All Defendants)**

96.     Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

97.     Defendants discriminated against Plaintiff based on his known relationship/association with his wife who was known and/or perceived to be pregnant and/or suffering from postpartum by Defendants in violation of Administrative Code § 8-107, *et seq.*

98.     This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

99.     Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

100.     Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the 225-day tolling of the statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

101.   As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees.

### SIXTH CAUSE OF ACTION
**(Retaliation in Violation of**
**FMLA, 29 U.S.C. § 2600 *et seq.* against All Defendants)**

102.   Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

103.   In violation of the FMLA, Defendants retaliated against Plaintiff for requesting and/or going on FMLA parental leave by terminating him.

104.   Defendants' terminating Plaintiff was a willful, retaliatory response to Plaintiff's requesting/taking FMLA parental leave.

105.   Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

106.   Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the 225-day tolling of the statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

107.   As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees.

## SEVENTH CAUSE OF ACTION

### (Retaliation in Violation of
### Executive Law § 296, *et seq.* against All Defendants)

108.    Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

109.    In violation of Executive Law § 296, Defendants retaliated against Plaintiff for complaining about Defendants' discriminatory treatment by, *inter alia*, terminating him.

110.    Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

111.    Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the 225-day tolling of the statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

112.    As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees.

## EIGHTH CAUSE OF ACTION
### Retaliation in Violation of
### Administrative Code § 8-107, *et seq.* against All Defendants)

113.    Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

114.    In violation of the Administrative Code § 8-107, *et seq.*, Defendants retaliated against Plaintiff for complaining about Defendants' discriminatory treatment by, *inter alia*, terminating him.

115.    Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled

17

to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

116.    Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the 225-day tolling of the statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

117.    As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees.

## NINTH CAUSE OF ACTION
### (Hostile Work Environment based on Religion
### in violation of Administrative Code § 8-107, *et seq.* against All Defendants)

118.    Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

119.    Defendants created or deliberately tolerated the creation of a hostile work environment for Plaintiff on the basis of his religion, which altered the conditions of Plaintiff's employment, in violation of Administrative Code § 8-107.

120.    Furthermore, by reason of the continuous nature of Defendants' religion-based discriminatory and disparate treatment of Plaintiff, which persisted throughout the relevant periods of time mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

121.    As a result of Defendants' harassing conduct, Plaintiff has incurred, and will continue to incur, damages thereby, including but not limited to back pay, forward pay, reduced pension benefits for the entirety of his retirement years, and attorneys' fees.

122.    As a result of Defendants' harassing conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life; and has incurred and will incur damages thereby.

### TENTH CAUSE OF ACTION
### (Hostile Work Environment based on Religion
### in violation of Executive Law, § 296, *et seq*. against all Defendants)

123.    Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

124.    Defendants created a hostile work environment for Plaintiff, on the basis of his religion when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment, in violation of Executive Law § 296(1)(a).

125.    Furthermore, by reason of the continuous nature of Defendants' religion-based discriminatory and disparate treatment of Plaintiff, which persisted throughout the relevant periods of time mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

126.    As a result of Defendants harassing conduct, Plaintiff has incurred, and will continue to incur, damages thereby, including but not limited to back pay, forward pay, reduced pension benefits for the entirety of his retirement years, and attorneys' fees.

127.    As a result of Defendants' harassing conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life; and has incurred and will incur damages thereby.

## ELEVENTH CAUSE OF ACTION

### (Hostile Work Environment based on National Origin and Race in violation of Administrative Code, § 8-101, *et seq*. against all Defendants)

128.     Plaintiff re-alleges incorporates all prior paragraphs herein by reference.

129.     Defendants created a hostile work environment for Plaintiff, on the basis of his national origin and race when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment, in violation of Administrative Code § 8-107(1)(a).

130.     Furthermore, by reason of the continuous nature of Defendants' national origin and race-based discriminatory and disparate treatment of Plaintiff, which persisted throughout the relevant periods of time mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

131.     As a result of Defendants' harassing conduct, Plaintiff has incurred, and will continue to incur, damages thereby, including but not limited to back pay, forward pay, reduced pension benefits for the entirety of his retirement years, and attorneys' fees.

132.     As a result of Defendants' harassing conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life; and has incurred and will incur damages thereby. Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

133.     Defendants created a hostile work environment for Plaintiff, on the basis of his national origin and race when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment, in violation of Executive Law § 296(1)(a).

134.     Furthermore, by reason of the continuous nature of Defendants' national origin and race-based discriminatory and disparate treatment of Plaintiff, which persisted throughout the relevant periods of time mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

135.     As a result of Defendants harassing conduct, Plaintiff has incurred, and will continue to incur, damages thereby, including but not limited to back pay, forward pay, reduced pension benefits for the entirety of his retirement years, and attorneys' fees.

136.     As a result of Defendants' harassing conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life; and has incurred and will incur damages thereby.

## TWELFTH CAUSE OF ACTION
### (Hostile Work Environment based on National Origin and Race in violation of Executive Law, § 296, *et seq*. against all Defendants)

137.     Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

138.     Defendants created a hostile work environment for Plaintiff, on the basis of his national origin and race when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment, in violation of Executive Law § 296(1)(a).

139.     Furthermore, by reason of the continuous nature of Defendants' national origin and race-based discriminatory and disparate treatment of Plaintiff, which persisted throughout the relevant periods of time mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

140.     As a result of Defendants harassing conduct, Plaintiff has incurred, and will continue to incur, damages thereby, including but not limited to back pay, forward pay, reduced pension benefits for the entirety of his retirement years, and attorneys' fees.

141.     As a result of Defendants' harassing conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life; and has incurred and will incur damages thereby.

## THIRTEENTH CAUSE OF ACTION
### (Caregiver Discrimination
### in Violation of the Administrative Code §8-107, *et seq.*
### against All Defendants)

142.     Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

143.     Defendants discriminated against Plaintiff based on his known caregiver status for his pregnant/postpartum wife and/or child in violation of Administrative Code § 8-107, *et seq.*

144.     This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

145.     Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

146.     Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the 225-day tolling of the statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

147.     As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees.

## FOURTEENTH CAUSE OF ACTION

### (Family Responsibility Discrimination in violation of Executive Law § 296, *et seq.* against All Defendants)

148.    Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

149.    Defendants discriminated against Plaintiff based on his familial status of an expecting and/or new parent in violation of Executive Law § 296, *et seq.*

150.    This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

151.    Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

152.    Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the 225-day tolling of the statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

153.    As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants, jointly and severally, awarding Plaintiff compensation and other damages in the form of back pay, front pay, and other monies and benefits unlawfully denied to Plaintiff, as well as for emotional distress, permanent damages to Plaintiff's emotional/mental well-being, loss of enjoyment of life, including pain and suffering, shame and humiliation.

1.      On the First Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

2.      On the Second Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

3.      On the Third Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

4.      On the Fourth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

5.      On the Fifth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

6.      On the Sixth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

7.      On the Seventh Cause of Action, judgment against Defendants compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

8.      On the Eighth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

9.      On the Ninth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

10.     On the Tenth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

11.     On the Eleventh Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

12.     On the Twelfth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

13.     On the Thirteenth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

14.     On the Fourteenth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

That Plaintiff have such other, further, and different relief as the Court deems just, proper, and equitable in the circumstances, together with interest on all Causes of Action, attorney's fees, and costs and disbursements in this action.

Dated: New York, New York
      September 23, 2022

BALLON STOLL P.C.

By:___*s/Edward M. Tobin*_____
    Edward M. Tobin, Esq. (ET6592)
    *Attorneys for Plaintiff*
    810 Seventh Avenue, Suite 405
    New York, New York, 10019
    212-575-7900
    etobin@ballonstoll.com