UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANMOHAN UTTARWAR,<br><br>                    Plaintiff,<br><br>             v.<br><br>LAZARD ASSET MANAGEMENT LLC, et al.,<br><br>                    Defendants. | 22 Civ. 8139 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

Plaintiff Manmohan[1] Uttarwar ("Uttarwar") brings this employment discrimination

action against his former employers, Defendants Lazard Asset Management LLC ("LAM") and

Keri Tusa ("Tusa").  Uttarwar asserts fourteen causes of action in his Complaint, alleging that

Defendants harassed him and terminated his employment due to his religion, race, national

origin, familial status, and caregiver status, as well as retaliated against him for complaining of

discrimination and for taking statutory parental leave, in violation of the Family and Medical

Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*.; New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law § 290 *et seq*.; and New York City Human Rights Law

("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*.  For the reasons that follow, Defendants'

motion for summary judgment is **GRANTED** as to all counts.

## BACKGROUND

The following facts are taken from the Complaint, the Rule 56.1 Statement and

Counterstatement, and evidentiary submissions in connection with Defendants' motion.  The

---

[1] The Court adopts this spelling based on the parties' pleadings.  Plaintiff's name in this case is
docketed as "Mammohan" Uttarwar.

facts are either undisputed or, if disputed, resolved in the light most favorable to Plaintiff as the non-moving party, with all reasonable inferences drawn in his favor. *See Horn v. Medical Marijuana, Inc.*, 80 F.4th 130, 135 (2d Cir. 2023).[2]  The Court "accept[s] all sworn statements by [the plaintiff] as to matters on which [he is] competent to testify, including what [he] did, what [he] observed, and what [he] was told by company managers." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019).

## I.    Uttarwar's Employment at LAM

Uttarwar was employed as a Senior Vice President and Senior Trading Technology Engineer at LAM from May 14, 2018, until his termination on September 25, 2019.  Rule 56.1 Statement ¶ 1, ECF No. 49.  The hiring manager for Uttarwar's position was the Chief Technology Officer and Global Head of Technology, Vijay Kasarabada ("Kasarabada").  Kasarabada Decl. ¶¶ 2-3, ECF No. 53.  During his first month of employment, Uttarwar reported to John LaBadia ("LaBadia"), a Senior Vice President at LAM.  Compl. ¶ 24, ECF No. 1; Uttarwar Decl. ¶ 8, ECF 69-1.  LaBadia and Uttarwar began reporting to Defendant Tusa, the Director and Head of Trading Technology, in June 2018.  Compl. ¶¶ 25-26; Tusa Decl. ¶¶ 3, 5, 6, ECF No. 52.  Defendants submit declarations stating that they began encountering issues with Uttarwar's performance within months of Uttarwar's start date, citing his failure to communicate effectively with Tusa and difficulties arising from Uttarwar's interactions with internal LAM colleagues and external LAM stakeholders.  Kasarabada Decl. ¶ 5; Tusa Decl. ¶¶ 16-17.

Uttarwar self-identifies as of the Hindu religion, racially Asian Indian, and of Indian national origin.  Compl. ¶¶ 4-6.  In or around October 2018, Uttarwar, Tusa, and LaBadia

---

[2] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.  All references to Rules are to the Federal Rules of Civil Procedure.

"engaged in a conversation wherein [Uttarwar] disclosed to Tusa and LaBadia that [he] was a member of the Hindu religion and originally from India.  At that meeting[,] LaBadia disclosed to Tusa and [Uttarwar] that he was a member of the Christian religion and had family roots originating in Ireland."  Uttarwar Decl. ¶¶ 35-36.  Tusa was also aware that Uttarwar and LaBadia "were of Asian Indian and Caucasian race, respectively," given their "physical appearance, including . . . skin color."  Compl. ¶ 45.  At around that time, Tusa approved Uttarwar's request for a vacation to travel to India during the Hindu festival of Diwali.  Uttarwar Decl. ¶ 37; Rule 56.1 Statement ¶ 15.

In December 2018, Uttarwar received his first work performance review.  Compl. ¶ 48. The 2018 performance review included feedback from Tusa and eight other colleagues.  Tusa rated Uttarwar "Below Expectations," the lowest score on LAM's performance assessment scale, in all performance categories.  Bellovin Decl. Ex. 6 ("2018 Performance Review") 1-2, ECF No. 69-7; Rule 56.1 Statement. ¶ 19.  Tusa encouraged Uttarwar, *inter alia*, to "find simple solutions when possible and avoid overcomplication;" "to see execution from start to finish on tasks;" and to "be thoughtful as to whether or not [Uttarwar] can add additional insight" during meetings. 2018 Performance Review 2.  Other reviewers rated Uttarwar as either meeting or exceeding expectations.  *See id.* at 1; Uttarwar Decl. ¶ 42.  Uttarwar gave himself a rating of "Significantly Exceeds Expectations" across all performance categories.  2018 Performance Review 1.  Shortly thereafter, Uttarwar requested a one-on-one meeting with Tusa to discuss her basis for the negative performance review.  Uttarwar Decl. ¶ 54.  Tusa stated that she "just thought it that way."  *Id.* ¶ 55.

In or around April 2019, Tusa removed direct subordinates from Uttarwar's department. Uttarwar Decl. ¶ 56.  Over the course of the subsequent months, Uttarwar alleges that "Tusa intentionally excluded [him] from approximately twenty-nine (29) key executive meetings [he]

3

was scheduled to attend," including meetings with top executives and one-on-one meetings with Tusa. *Id.* ¶¶ 58-63. By contrast, LaBadia continued to supervise other employees and was not excluded from meetings. *See id.* ¶¶ 31, 57, 61.

In or around June 2019, Uttarwar received a negative mid-year work performance review. Uttarwar Decl. ¶ 67; Rule 56.1 Statement ¶ 23. The 2019 performance review included feedback only from Tusa, who again rated Uttarwar "Below Expectations" across all categories. Uttarwar Decl. ¶ 67; Rule 56.1 Statement. ¶ 24. The review was based in part on complaints from stakeholders "across many areas" about Uttarwar's performance. Rule 56.1 Statement ¶ 27. Tusa specifically cited a number of work performance issues, including, *inter alia*, "inaction," a "quick[ness] to deflect/finger-point when any challenges are met," and "0% execution" on certain assigned tasks. Bellovin Decl. Ex. 7 ("2019 Performance Review"), at 1-2, ECF No. 69-8. Uttarwar again gave himself a rating of "Significantly Exceeds Expectations" across all categories. *Id.* at 1.

In or around July 2019, "Defendants removed [Uttarwar] from the allocated private office for Front Office [Senior Vice Presidents ("SVPs"] that [he] shared with LaBadia and forced [him] to work on the general floor with other lower-ranking personnel." Uttarwar Decl. ¶ 89. After the move, Uttarwar "complained verbally to Kasarabada" that his removal from the SVP office "was the latest of a pattern of disparate treatment [by Tusa] compared to LaBadia." *Id.* ¶ 92. At around the same time, Uttarwar met with Tusa and a LAM human resources representative to complain "that Tusa's false and baseless criticisms in [his] performance evaluation were discriminatory treatment." *Id.* ¶¶ 93-94.

On July 31, 2019, Tusa communicated to a colleague that Uttarwar "got a below [expectations rating] in *all areas* for his end of year review," Tusa Decl. Ex. 10, at 3, ECF No. 52-10, and that "[Human Resources Managing Director Kelly Sliger] thought [LAM] might have

4

enough documentation to let [Uttarwar] go." *Id.*  Katelyn Del Valle, who worked for human resources, stated, "My sense was that we would still need to take a few steps before making the final decision [on terminating Uttarwar]," but noted that she would follow up. *Id.* at 4.

"In or about August 2019, LAM made the business decision to engage in a reduction in force ('RIF')."  Kasarabada Decl. ¶ 8; Rule 56.1 Statement ¶ 1.  Kasarabada and Tusa testify that they "made the decision to terminate Plaintiff's employment as part of the [RIF]."  Rule 56.1 Statement ¶ 43.  Tusa and Kasarabada further testify that they selected Uttarwar for termination because of his poor work performance. *Id.*; Kasarabada Decl. ¶ 9; Tusa Decl. ¶ 35.  Ultimately, the RIF involved the termination of more than 50 LAM employees, including three other IT employees.  Sliger Decl. ¶¶ 6-8, ECF No. 54; Rule 56.1 Statement ¶ 42.  Other Senior Vice Presidents were also terminated as part of the RIF.  *See* Sliger Decl. Ex. 2 at 2, ECF No. 54-2.

On August 16, 2019, Plaintiff requested and was granted twenty weeks of paid parental FMLA leave, beginning on September 3, 2019.  Rule 56.1 Statement ¶ 40.  Uttarwar "made Defendants aware" that as a caregiver, he would be responsible for "childcare, scheduling and transporting [his wife and child] to doctor's appointments and doing other necessary housekeeping chores" while on leave.  Compl. ¶ 15.  On September 25, 2019, while Uttarwar was on FMLA leave, Defendants informed Uttarwar that his employment at LAM was terminated as part of the company-wide RIF.  Uttarwar Decl. ¶¶ 102-03; Rule 56.1 Statement ¶¶ 41-42.

On September 25, 2019, Uttarwar wrote an email to Kasarabada that, among other things, asked Kasarabada "to reconsider [his] termination."  Uttarwar Decl. ¶ 102, 104; Rule 56.1 Statement ¶ 45.  In his email, Uttarwar did not allege that he was discriminated against by anyone at LAM.  Uttarwar Decl. ¶ 104; Rule 56.1 Statement ¶ 45.  Defendants offered Uttarwar a severance payment consistent with the firm's severance formula for the 2019 RIF.  Sliger Decl.

¶ 9; Second Gotko Decl. Ex. 8 at 3, ECF No. 51-8.  The severance package included payment of Uttarwar's salary through October 29, 2019, when Uttarwar's paid parental leave was scheduled to end.  Tusa Decl. Ex. 11 at 2, ECF No. 52-11.

From November 8, 2019, to September 14, 2021, Uttarwar sent more than twenty emails to employees of LAM's human resources department rejecting the offered severance payment and attempting to negotiate it.  *See* Second Gotko Decl. Ex. 8-11, ECF No. 51-8 to 51-11.  None of Uttarwar's emails alleged that he believed he was discriminated against.  *See id.*  On September 23, 2022, Plaintiff filed this action.  *See* Compl.[3]

## II.   John LaBadia

Plaintiff claims that he was similarly situated to a colleague, John LaBadia, who is not a member of any of Uttarwar's protected groups, and compared to whom he was allegedly treated less well.  Compl. ¶¶ 30-47.  LaBadia began working at LAM in 2003, more than a decade before Plaintiff.  Rule 56.1 Statement ¶ 70.  During the relevant period, LaBadia was, like Uttarwar, a Senior Vice President at LAM.  *Id.* ¶ 4.  LaBadia was Uttarwar's supervisor for the first month of Uttarwar's employment.  Uttarwar Decl. ¶ 8.  Following that first month, LaBadia and Uttarwar both reported to Tusa.  Rule 56.1 Statement ¶ 4.  LaBadia received positive 2018 end-of-year and 2019 mid-year reviews.  *Id.* ¶¶ 63-64.  Tusa did not receive complaints about LaBadia from internal or external LAM stakeholders.  *Id.* ¶¶ 66-67.  At the time of Uttarwar's termination, LaBadia supervised three LAM employees.  *Id.* ¶ 62.

---

[3] On October 11, 2023, the case was reassigned to the undersigned.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A material fact is one that would affect the outcome of the suit under the governing law, and a dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party."  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021).  When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing particular materials in the record.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Where, as here, the plaintiff is the party opposing summary judgment, the Court is "required to accept all sworn statements by [the plaintiff] as to matters on which []he [is] competent to testify, including what []he did, what []he observed, and what []he was told by company managers."  *Davis-Garett*, 921 F.3d at 46.  To overcome a motion for summary judgment, however, the plaintiff may not rely on "conclusory statements, conjecture, and inadmissible evidence," *Ridinger v. Dow Jones & Co.*, 651 F.3d 309, 317 (2d Cir. 2011), but instead must offer some "hard evidence showing that [his] version of the events is not wholly fanciful."  *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), *cert. denied*, 524 U.S. 911 (1998).  The Court is

required to "'disregard all evidence favorable to the [defendants] that the jury is not required to

believe.  That is, the court should give credence to the evidence favoring the [plaintiff] as well as

that evidence supporting the [defendants] that is uncontradicted and unimpeached, at least to the

extent that that evidence comes from disinterested witnesses.'" *Davis-Garett*, 921 F.3d at 46

(quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)).

      Courts must take an extra measure of caution in evaluating employment discrimination

claims because "direct evidence of discriminatory intent is rare and such intent often must be

inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality*

*Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006).  However, "'the salutary purposes of

summary judgment—avoiding protracted, expensive and harassing trials—apply no less to

discrimination cases than to . . . other areas of litigation.'" *Abdu-Brisson v. Delta Air Lines, Inc*.,

239 F.3d 456, 466 (2d Cir. 2001) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).  It

is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of

discrimination cases." *Abdu-Brisson*, 239 F.3d at 466.  Even in this context, "a plaintiff must

provide more than conclusory allegations to resist a motion for summary judgment," *Conahan v.*

*MedQuest Ltd*., No. 20 Civ.1325, 2022 WL 16748585, at *3 (S.D.N.Y. Nov. 7, 2022), and it is

well established that "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's

position will be insufficient' to defeat a summary judgment motion." *Fabrikant v. French*, 691

F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)).

Likewise, "[s]tatements that are devoid of any specifics, but replete with conclusions, are

insufficient to defeat a properly supported motion for summary judgment." *Griffin v. Ambika*

*Corp.*, 103 F. Supp. 2d 297, 308 (S.D.N.Y. 2000).  A plaintiff's self-serving statement, without

direct or circumstantial evidence to support the charge of discrimination, is also insufficient to

defeat a motion for summary judgment. *See Fincher v. Depository Tr. & Clearing Corp.*, No. 06

Civ. 9959, 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008), *aff'd*, 604 F.3d 712 (2d Cir. 2010).

## DISCUSSION

### I. Preliminary Matters

Two preliminary matters warrant brief discussion.  First, having declined to engage in any meaningful discovery, Uttarwar rests his case largely on his own testimony.[4]  During the more than six months of discovery in this case, Uttarwar did not attempt to take any depositions. He does not allege that anything prevented him from doing so.  *See generally* Mot. for Extension of Time, ECF No. 72.  After the close of discovery and one week prior to the conclusion of summary judgment briefing, Uttarwar filed a motion requesting that this Court reopen discovery to allow him to conduct fact witness depositions of two former LAM employees.  *See id*.  As Uttarwar offered no explanation for his failure to depose the witnesses prior to the discovery deadline, the Court denied his request.  *See* October 18 Order, ECF No. 74.

Second, Uttarwar submitted a flawed Rule 56.1 Counterstatement, largely devoid of citations to admissible or relevant materials.  *See* Pl.'s Counterstatement, ECF No. 70.  Local Civil Rule 56.1 provides that "[u]pon any motion for summary judgment," the moving party shall annex "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Loc. Civ. R.

---

[4] Uttarwar not only declined to conduct discovery to substantiate his claims, but also repeatedly failed to comply with discovery requests and orders.  *See, e.g*., Mot. to Compel 1-2, ECF No. 35; First Gotko Decl. ¶¶ 4, 13-23, ECF No. 47; June 23, 2023 Conference Tr. 12:9-13, ECF No. 42; June 23 Order, ECF No. 38.  Given the substantial waste of resources and costs that Uttarwar caused Defendants to incur, the Court granted Defendants' motion for sanctions.  *See* June 23 Order (holding that "Plaintiff shall bear all costs Defendants incurred by reason of his discovery violations, including the costs of the deposition, including attorneys' fees").

56.1(a).  The party opposing the motion is then to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts."  Loc. Civ. R. 56.1(b).  "Each statement by the movant or opponent . . . including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible."  Loc. Civ. R. 56.1(d).

Uttarwar's Rule 56.1 Counterstatement frequently fails at a basic level to admit or deny many of the material facts identified by Defendants, and instead often simply disclaims knowledge of them.  *See, e.g.*, Pl.'s Counterstatement ¶ 33 (denying "any independent knowledge" of the stated material fact), ¶¶ 34-36 (denying only the "characterization" of the stated material fact), ¶ 55 (providing irrelevant narrative without addressing the stated material fact).  And throughout the Counterstatement, Uttarwar repeatedly offers conclusory denials, citations to his own conclusory statements, commentary without any citations to admissible evidence, and citations to largely irrelevant exhibits.  *See, e.g.*, *id.* at ¶ 10 (failing to dispute the stated material fact and citing Uttarwar's own deposition transcript to make a separate point), ¶ 13 (citing no evidence to support the contention that Uttarwar held the responsibilities of a Chief Technology Officer, Chief Information Officer, Head of Trading Technology, or Managing Director), ¶ 16 (citing no evidence that Kasarabada and Tusa did not encounter issues with Uttarwar's performance from the start of his employment), ¶ 21 (citing irrelevant emails to "clarify" the stated material fact), ¶ 27 (citing Uttarwar's own conclusory statements in denying that Uttarwar received negative feedback from business stakeholders).

To ensure an accurate recital of the facts, the Court engaged in its own independent review of the record, including documents, declarations, and testimony submitted by the parties.

As noted, the facts are undisputed unless otherwise stated and are described in the light most favorable to the Plaintiff.

## II.    Overview of the NYSHRL and the NYCHRL

In 2019, the New York State Legislature amended the NYSHRL to direct courts to construe it, like the NYCHRL, "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL], have been so construed."  N.Y. Exec. Law § 300.  "These amendments were signed into law by Governor Andrew Cuomo on or about August 12, 2019."  *Wellner v. Montefiore Med. Ctr.*, No. 17 Civ. 3479, 2019 WL 4081898, at \*5 n.4 (S.D.N.Y. Aug. 29, 2019).  "[W]hile courts agree that the amendments do not apply retroactively, courts have arrived at different conclusions with respect to the amendments' effective dates."  *Europe v. Equinox Holdings, Inc.*, No. 20 Civ. 7787, 2022 WL 4124763, at \*7 n.10 (S.D.N.Y. Sept. 9, 2022) (collecting cases), *appeal withdrawn*, No. 23-907, 2023 WL 9021623 (2d Cir. Aug. 28, 2023); *compare Del Villar v. Hyatt Hotel Corp.*, No. 19 Civ. 10891 , 2022 WL 2316205, at \*4 n.3 (S.D.N.Y. June 28, 2022) (stating that the amendments to the NYSHRL apply "only to conduct that took place after its effective date, August 12, 2019"), *with Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021) (stating that the amendments to the NYSHRL "only apply to claims that accrue on or after the effective date of October 11, 2019").  Here, while all of Uttarwar's state claims accrued before October 11, 2019, his claims pertaining to his termination accrued after August 12, 2019.  *See supra.*

Below, while the Court discusses changes in legal standards brought about by the amendments, it does not need to determine the effect, if any, of the 2019 amendments on

Uttarwar's various NYSHRL claims, because it concludes that even under the NYCHRL's liberal standards, Uttarwar's claims do not survive summary judgment.

### III.     Uttarwar's Unlawful Discrimination Claims

The NYSHRL and NYCHRL bar employers from discriminating against employees based on their membership in a protected class.  *See* N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a).  Uttarwar's First, Second, Third, Fourth, Fifth, Thirteenth, and Fourteenth Counts allege unlawful employment discrimination based on Uttarwar's race, national origin, religion, relationship with a pregnant wife, status as a caregiver, and status as an expecting and/or new parent, in violation of the NYSHRL and NYCHRL.  Compl. ¶¶ 73, 79, 85, 91, 97, 143, 149.  Uttarwar's employment discrimination claims are not based on direct evidence of discrimination; as explained below, they are based on circumstantial evidence, including the timing of his termination and the different treatment that he received in comparison to a co-worker who is not a member of the protected groups.

Because the Court holds that Uttarwar's claims do not survive even when assessed under the NYCHRL's more permissive standards, it holds that Uttarwar's NYSHRL claims likewise do not survive.  Accordingly, as discussed below, Defendants' application for summary judgment as to all of Plaintiff's employment discrimination claims is **GRANTED**.

### A.  Legal Standards

**NYSHRL (pre-2019 amendments)**.  Courts analyze NYSHRL claims brought before the law's 2019 amendments "under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)" for employment discrimination claims based on circumstantial evidence.  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *see also Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

"Under th[e] [*McDonnell-Douglas*] framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination."  *Stuart v. T-Mobile USA, Inc.*, No. 14 Civ. 4252, 2015 WL 4760184, at *5 (S.D.N.Y. Aug. 12, 2015).  At this first step, Plaintiff "must show that: (1) he was a member of a protected class; (2) he was competent to perform the job in question or was performing the job duties satisfactorily; (3) he suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination." *See Cunningham v. N.Y. Junior Tennis League, Inc.*, No. 18 Civ. 1743, 2020 WL 916964, at *3 (S.D.N.Y. Feb. 26, 2020).  Thereafter,

> [i]f the plaintiff has established a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the disparate treatment.  If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination.

*Buon v. Spindler*, 65 F.4th 64, 78-79 (2d Cir. 2023).  "[W]here there is overwhelming evidence that the employer had a legitimate reason to dismiss an employee, the employee must present more than [a] few isolated pieces of contrary evidence to survive summary judgment." *Richardson v. Comm'n on Hum. Rts. & Opportunities*, 532 F.3d 114, 125 (2d Cir. 2008).  In so doing, a "[p]laintiff may rely on evidence presented to establish [his] *prima facie* case as well as additional evidence, which may include direct or circumstantial evidence of discrimination." *Wetzel v. Town of Orangetown*, No. 03 Civ. 9896, 2011 WL 13382679, at *3 (S.D.N.Y. Sept. 30, 2011).

**NYSHRL (post-2019 amendments) and NYCHRL**.  The "NYCHRL is designed to be more lenient toward plaintiffs than its federal and state equivalents," *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 654 (S.D.N.Y. 2015).  The most significant difference between the NYCHRL, on the one hand, and federal and pre-amendment state equivalents, on the other, is with respect to the third element of a *prima facie* claim.  Under the NYCHRL, "[t]he plaintiff

need not prove any adverse employment action; instead, [he] must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 129 (S.D.N.Y. 2020). It is sufficient for the purposes of establishing this prong that a plaintiff shows that he "was treated differently from others in a way that was more than trivial, insubstantial, or petty." *Maynard v. Montefiore Med. Ctr.*, No. 18 Civ. 8877, 2021 WL 396700, at *5 (S.D.N.Y. Feb. 4, 2021).

If a plaintiff succeeds in establishing a *prima facie* case, "the defendant then has the opportunity to offer legitimate reasons for its actions." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75-76 (2d Cir. 2015). If the defendant succeeds, the burden shifts back to the plaintiff to provide evidence "either that the defendant's 'reasons were pretextual,' or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least 'in part on discrimination.'" *Id.* at 76 (quoting *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 35, 41 (N.Y. App. Div. 2012); *see also Hamburg v. N.Y. Univ. Sch. of Med.*, 62 N.Y.S.3d 26, 32 (N.Y. App. Div. 2017). When applying this standard, however, "district courts must be mindful that the NYCHRL is not a general civility code," and a plaintiff must still establish "a discriminatory motive" for any complained-of conduct. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) ("It is not enough that a plaintiff has an overbearing or obnoxious boss. She must show that she has been treated less well at least in part *because of* her [protected characteristic]."); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 258 (E.D.N.Y. 2012) (holding that even under the NYCHRL, "a plaintiff must still link the adverse employment action to a discriminatory motivation."), *aff'd*, 713 F.3d 163 (2d Cir. 2013). "[T]he NYCHRL does not alter the kind, quality, or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56." *Conahan*, 2022 WL 16748585, at *6.

**B. Application**

Although pre-amendment NYSHRL employment discrimination claims are generally assessed separately from NYCHRL employment discrimination claims, *see Del Villar*, 2022 WL 2316205, at *7-8, here, the Court need not separate the analyses, because even under the NYCHRL, Uttarwar's employment discrimination claims fail.  It, therefore, stands to reason that his employment discrimination claims fail under the relevant federal and state standards.  *See Mihalik*, 715 F.3d at 109 (The NYCHRL is a "one-way ratchet, by which interpretations of state and federal civil rights statutes can serve only as a floor below which the City's Human Rights law cannot fall.").

    i.    ***Prima Facie* Case**

As explained below, the Court determines that Uttarwar has failed to make a *prima facie* case of discrimination with respect to his discrimination claims based on race, national origin, or religion.  Whether Uttarwar has made a *prima facie* case of discrimination based on his relationship with a pregnant wife, status as a caregiver, and status as an expecting and/or new parent is a closer call.  But even assuming *arguendo* that Uttarwar has met that burden, Defendants have established that his termination was due to a legitimate, non-discriminatory reason—namely, that Uttarwar was selected for termination as part of a company-wide reduction in workforce due to his documented record of negative performance reviews—and Uttarwar has failed to create a genuine issue of fact as to whether that reason was pretextual.  Summary judgment is therefore appropriate as to Plaintiff's employment discrimination claims.

With respect to the elements of a *prima facie* case, there is no dispute as to the first and second elements of Uttarwar's employment discrimination claims—i.e., that he was a member of his alleged protected classes and that he was qualified for the position for which he was

employed at LAM.  As to the third element of his claims, Uttarwar alleges that he: (1) received

two negative performance reviews and a negative email; (2) was stripped of supervisees; (3)

received an overly burdensome workload; (4) was excluded from meetings; and (5) was

terminated.  *See* Pl.'s Mem. in Opp'n to Summ. J ("Opp'n") 3-4, ECF No. 68.  There can be no

doubt that Uttarwar's termination constitutes an actionable injury under both the NYCHRL (i.e.,

termination would deter a person from engaging in protected activity) and the pre-amendment

NYSHRL (i.e., it constitutes an adverse employment action).  *See Benzinger*, 447 F. Supp. 3d at

129 (NYCHRL); *Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013) (NYSHRL).  And at

least some of the other alleged injuries are sufficient to establish the third element of a New York

City discrimination claim.  *See, e.g.*, *Villar v. City of New York*, 135 F. Supp. 3d 105, 134

(S.D.N.Y. 2015) (for the purposes of the NYCHRL, evidence that a plaintiff was stripped of

"[his] supervisory responsibilities" and "assigned . . . too many duties . . . constitutes more than

petty slights and trivial inconveniences.").

     As for the fourth element, discriminatory intent may be inferred from "circumstances

including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically

degrading terms; or its invidious comments about others in the employee's protected group; or

the more favorable treatment of employees not in the protected group; or the sequence of events

leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir.

2015).  Here, Uttarwar argues that "two forms of circumstantial evidence [] are each

independently sufficient to infer animus": (1) Defendants' preferential treatment of the allegedly

similarly situated LaBadia, and (2) the temporal proximity between protected activities (namely,

Uttarwar's travel to attend a religious festival in India, and his parental leave) and negative

treatment by LAM, including his termination.  Opp'n 5-6.  The Court considers each of

Uttarwar's arguments in turn.

**Disparate Treatment**.  Uttarwar suggests that Defendants discriminatorily "applied a double standard against Plaintiff" in comparison to the allegedly similarly situated LaBadia. Opp'n 10.  To be "similarly situated," the individual with whom Uttarwar attempts to compare himself must be "similarly situated in all material respects."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).  Their circumstances need not be identical, *see Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001), "but they must share a sufficient amount of significant employment characteristics to be considered similarly situated."  *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 410 (S.D.N.Y. 2006).  "These characteristics include similarities in education, seniority, performance, and specific work duties."  *Id.*

Defendants note at least three differences between LaBadia and Uttarwar that render them dissimilar and explain any differential treatment: (1) LaBadia's seniority relative to Uttarwar; (2) LaBadia's supervisory responsibilities, which Uttarwar did not share; and (3) LaBadia's superior performance reviews.  "Whether two employees are similarly situated ordinarily presents a question of fact for the jury."  *Graham*, 230 F.3d at 39.  But as discussed below, considering the record as a whole and viewing Defendants' testimony in the light most favorable to Uttarwar, no reasonable jury could find that he and LaBadia were in fact similarly situated.

*Seniority*.  There is no dispute that LaBadia was senior to Uttarwar, as he began working at LAM more than a decade before Uttarwar, in 2003, and was Uttarwar's supervisor for the first month of Uttarwar's employment.  Rule 56.1 Statement ¶¶ 4, 70; Uttarwar Decl. ¶ 8; *see Forte v. Liquidnet Holdings, Inc.*, No. 14 Civ.2185, 2015 WL 5820976, at *12 (S.D.N.Y. Sept. 30, 2015) (an individual's comparatively longer tenure contributed to the Court's finding that the individual and plaintiff were not similarly situated), *aff'd*, 675 F. App'x 21 (2d Cir. 2017).

*Responsibilities*.  During the relevant period, LaBadia and Uttarwar held the same title, namely, that of Senior Vice President at LAM.  Rule 56.1 Statement ¶¶ 1, 4.  But their responsibilities were not identical.  Again, LaBadia was Uttarwar's supervisor during Uttarwar's first month at LAM.  *Id.* ¶ 4; Uttarwar Decl. ¶ 8.  At the time of Uttarwar's termination, LaBadia supervised three LAM employees, while Uttarwar supervised none.  Rule 56.1 Statement ¶ 62.  Uttarwar purports to "[d]eny" this fact by asserting that he and LaBadia had "virtually identical roles."  Pl.'s Counterstatement ¶ 62.  But Uttarwar's conclusory statement, which has no support in the record, does not amount to a genuine dispute of fact.  *See Gorzynski v. JetBlue Airways Corp*., 596 F.3d 93, 101 (2d Cir. 2010) ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").  And Uttarwar does not deny that LaBadia had supervisory authority over several employees, while he did not.  There is therefore no dispute of fact that the two had different responsibilities at LAM.  *See Bush*, 452 F. Supp. 2d at 410 (finding that differences in actual level of responsibilities, despite having the same nominal designation, rendered two employees not similarly situated).

*Performance Evaluations*.  There is no genuine dispute that LaBadia received positive performance evaluations, while Uttarwar did not.  LaBadia received positive 2018 end-of-year and 2019 mid-year reviews, with the latter "exceed[ing] expectations."  Rule 56.1 Statement ¶¶ 63-64.  Moreover, Tusa, their supervisor, testified that she did not receive complaints about LaBadia from internal or external LAM stakeholders.  *Id.* ¶¶ 66-67.  In contrast, Uttarwar received a negative 2018 end-of-year review in which he was rated "Below Expectations" in all review categories by his supervisor, *id.* ¶¶ 17-18, and another negative review with a "Below Expectations" rating for his 2019 mid-year performance review.  *Id.* ¶¶ 23-24.  This was in part because his supervisor received complaints from stakeholders "across many areas" about Uttarwar's performance.  *Id.* ¶ 27; *see also* Kasarabada Decl. ¶ 5; Tusa Decl. ¶¶ 16-18.

18

Accordingly, this fact, too, renders LaBadia and Uttarwar differently situated.  *See Woolf v. Bloomberg L.P.*, No. 16 Civ. 6953, 2019 WL 1046656, at *19 (S.D.N.Y. Mar. 5, 2019) (reasoning that in assessing discrimination claim, an employer's treatment of a plaintiff who received negative performance reviews should be compared to "similarly situated individuals with a history of negative performance reviews"), *aff'd sub nom. Woolf v. Strada*, 792 F. App'x 143 (2d Cir. 2020).

Uttarwar does not genuinely dispute these facts.  With respect to LaBadia's performance reviews, Uttarwar only disclaims knowledge, stating that he lacks "independent knowledge" either of LaBadia's performance reviews, or of the absence of any complaints about LaBadia's work.  Pl.'s Counterstatement ¶¶ 63-64, 66-67.  But such ignorance—which is likely the product of Uttarwar's own failure to take discovery diligently, *see supra*—does not amount to a genuine dispute of fact sufficient to resist summary judgment.  *See Hale v. Vidal*, No. 22-2973, 2023 WL 7211909, at *1 (2d Cir. Nov. 2, 2023) (concluding that where the plaintiff "relie[d] almost entirely on his own affidavit to establish the [employer's] motive in taking any action against him, but [where] that affidavit [was] too conclusory to create a genuine issue of material fact," the district court "correctly granted summary judgment" for the defendant).

With respect to Uttarwar's own negative performance reviews, Uttarwar does not deny the fact that his reviews were negative, but purports to dispute the basis for those negative reviews, arguing "that the evaluation[s] made no sense since Plaintiff had just received ample and global praise from numerous high-ranking LAM executives."  Pl.'s Counterstatement ¶ 18. In support of that assertion, Uttarwar cites: (1) his own declaration stating that he received "abundant praise" from clients and high-ranking LAM employees, *id.* (citing Uttarwar Decl. ¶ 40); and (2) two emails—one from LAM Chief Operating Officer Norbert Rustler, which does

19

not appear to mention Uttarwar by name, *see* Pl.'s Counterstatement ¶ 18 (citing Bellovin Decl. Ex. 2, ECF No. 69-2); and another by LAM Managing Director Joe Ramos, describing work completed by Uttarwar as "amazing." Pl.'s Counterstatement ¶ 18 (citing Bellovin Decl. Ex. 4, ECF No. 69-5).  Without making credibility determinations, and drawing all inferences in favor of Uttarwar, the existence of one or more positive emails does not create a dispute about the basis for Uttarwar's negative reviews, including the complaints that Uttarwar's supervisor, Tusa, received about his work.  *See* Rule 56.1 Statement ¶ 27.  Uttarwar avers that he himself never received any of these complaints.  *See* Pl.'s Counterstatement ¶ 27.  But in denying any personal knowledge of the complaints, Uttarwar does not genuinely dispute that his supervisor, Tusa, in fact received them.  Uttarwar's lack of knowledge in this regard, and his consequent inability to genuinely dispute these facts, are at best the result of his own failure to take meaningful discovery, *see supra*, and not a reason to deny summary judgment.

Uttarwar nevertheless asserts that he "greatly outperformed" LaBadia, Pl.'s Counterstatement ¶ 79, citing two emails, neither of which mentions LaBadia.  *See* Bellovin Decl. Ex. 23, ECF No. 69-24 (email thread discussing a report drafted by Uttarwar); Bellovin Decl. Ex. 24, ECF No. 69-25 (congratulating a team that included Uttarwar for completing a task).  Nothing in these emails supports Uttarwar's contention that his work performance was on par with, or exceeded, LaBadia's.  Uttarwar also cites his own declaration, which simply recants the same assertion verbatim.  *See* Uttarwar Decl. ¶ 66 ("I still greatly outperformed LaBadia").  But that conclusory statement is insufficient to overcome summary judgment.  *See Ridinger*, 651 F.3d at 317 (stating that to overcome a motion for summary judgment, a plaintiff may not rely on "conclusory statements, conjecture, and inadmissible evidence."); *S. Katzman Produce, Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) ("A party opposing summary judgment normally does

not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory.").

In sum, the undisputed record establishes that there is no genuine dispute of fact that Uttarwar and LaBadia were differently situated in terms of seniority, responsibilities, and performance evaluations,[5] such that no reasonable jury could find them similarly situated. *See Benzinger*, 447 F. Supp. 3d at 123 (finding for the defendants where "[t]he evidence in the record simply would not allow a reasonable juror to conclude that [the plaintiff] was treated less well than any similarly situated employee."); *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001) ("[A] court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong [of a disparate treatment claim] met."). Ultimately, to the extent that the purported similarities between Uttarwar and LaBadia could have been substantiated with admissible evidence beyond Uttarwar's own conclusory testimony, the absence of such evidence stems from Uttarwar's own failure to take meaningful discovery. *See supra*. Accordingly, Uttarwar's differential treatment in comparison to LaBadia cannot give rise to an inference of discriminatory intent, and Uttarwar's "conclusory statements to the contrary do not suffice and cannot save h[is] NYCHRL discrimination claim." *See Benzinger*, 447 F. Supp. 3d at 123.

---

[5] There is one final wrinkle here: Uttarwar alleges that some of these factors—namely, Uttarwar's loss of supervisory responsibilities and his negative performance reviews—are themselves evidence of the disparate treatment underlying his employment discrimination claims. *See* Opp'n 3-4. But this ultimately boils down to the same conclusory allegation that Uttarwar and LaBadia were similarly situated. As explained above, they are not, in part because the undisputed record establishes that their supervisor, Tusa, received complaints about Uttarwar's performance, but did not receive similar complaints about LaBadia's. *See supra*.

**Temporal Proximity**.  Uttarwar next argues that the timing of two events creates an inference of discrimination by Defendants: (1) within two months of requesting vacation time to attend a religious festival in India, Uttarwar received a negative performance review; and (2) while Uttarwar was on parental leave, Tusa sent an email critiquing Uttarwar's performance to LAM's management, and Defendants ultimately terminated him.  *See* Opp'n 7.

The Court need not address the merits of Uttarwar's first argument—that he was discriminated against for requesting a vacation to travel to India for a religious festival—because it was made for the first time in his Opposition Brief.  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (declining to address the merits of a claim raised for the first time in the plaintiff's opposition).[6]

Uttarwar's second point—that the close temporal proximity between his parental leave and his termination could support an inference of discrimination based on his relationship with a pregnant wife, status as a caregiver, and status as an expecting and/or new parent—is his strongest argument.  *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010) ("Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action.").  But where "timing is the only basis for a claim of retaliation, . . . an inference of retaliation does not arise" if "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity."  *Slattery v. Swiss*

---

[6] Even if the Court were to construe the Complaint as having made this allegation, the fact that Defendants *granted* Uttarwar's request cuts against an inference of discrimination.  *See Martinez-Santiago v. Zurich N. Am. Ins. Co.*, No. 07 Civ. 8676, 2010 WL 184450, at *9 (S.D.N.Y. Jan. 20, 2010) (finding that an employer's history of treating the plaintiff well, including by granting the plaintiff's request for parental leave, "cuts *against* an inference of discriminatory circumstances" and "refutes an inference of discrimination").

*Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). And here, some gradual adverse job actions were taken well before Uttarwar went on leave. Defendants have submitted testimony indicating that they began encountering issues with Uttarwar's performance within months of his start date, including during interactions with internal LAM colleagues and external LAM stakeholders. Kasarabada Decl. ¶ 5; Tusa Decl. ¶¶ 16-18. Uttarwar was stripped of supervisees after his first negative performance review, *see* Uttarwar Decl. ¶ 56, and he lost access to the office space he shared with LaBadia after his second one. *Id.* ¶ 89.

Ultimately, the Court need not decide whether, under the facts of this case, the temporal proximity between Uttarwar's parental leave and his termination is sufficient to sustain a *prima facie* case, or if the progressive adverse actions against him taken by Defendants—which began long before his leave—are sufficient to negate the causation element of his claim. That is because, as explained below, Defendants have offered a legitimate non-discriminatory reason for his termination, which Uttarwar fails to establish is pretextual.

### ii.     Defendants Articulate Legitimate, Non-Discriminatory Reasons for Their Actions

Even assuming *arguendo* that Uttarwar has established a *prima facie* case of discrimination, Defendants have offered a legitimate, non-discriminatory explanation for his termination: LAM engaged in a company-wide RIF in August 2019 and selected Uttarwar to be a part of the staff reduction due to his poor performance evaluations. The undisputed evidence shows that LAM made the business decision to terminate more than 50 employees, including three employees within Uttarwar's IT group, as part of a RIF, *see* Rule 56.1 Statement ¶ 42; and that Uttarwar was selected for termination based on his poor performance evaluations. *See id.* ¶¶ 17-28, 43; Kasarabada Decl. ¶ 9; Tusa Decl. ¶ 35. "Reductions in work force for economic reasons are a legitimate nondiscriminatory basis for termination of employment," *Smith v. Fed.*

*Defs. of N.Y., Inc.*, 76 N.Y.S.3d 154, 155 (N.Y. App. Div. 2018), and it is well established that

"[p]oor performance is a legitimate, non-discriminatory reason for terminating an employee,"

*Ramsaran v. Booz & Co. (N.A.)*, No. 14 Civ. 708, 2015 WL 5008744, at *7 (S.D.N.Y. Aug. 24,

2015) (collecting cases); *see also Cruz v. Bernstein Litowitz Berger & Grossman LLP*, No. 20

Civ. 8596, 2023 WL 2691456, at *8 (S.D.N.Y. Mar. 29, 2023) ("Courts in this Circuit routinely

find that evidence indicating unsatisfactory work performance by the plaintiff is sufficient to

establish a legitimate, non-discriminatory reason for an adverse employment action.").  The

evidence thus sufficiently supports a non-discriminatory basis for Defendants' conduct sufficient

to rebut a presumption of discrimination.

### iii.  Uttarwar Fails to Establish Pretext

Because Defendants have established non-discriminatory reasons for terminating

Uttarwar, the burden shifts back to Uttarwar to "show that [Defendants] treated h[im] less well,

at least in part for a discriminatory reason."  *Ya-Chen Chen v. City Univ. of N.Y.*, No. 11Civ.

0320, 2014 WL 1285595, at *9 (S.D.N.Y. Mar. 31, 2014), *aff'd,* 805 F.3d 59 (2d Cir. 2015).

Uttarwar attempts to establish that Defendants' actions were pretextual by alleging that

their proffered explanation was "unworthy of credence," Opp'n 10, and by re-alleging that he

was disparately treated relative to LaBadia.  But as discussed *supra*, Uttarwar fails to show that

any difference in treatment that he and LaBadia experienced was motivated by discriminatory

animus, because it is undisputed that, among other things, their supervisor received complaints

about Uttarwar's performance and did not receive any such complaints about LaBadia's.  In

determining whether the reason for an adverse action was pretextual, "it is not for the Court to

decide whether the complaints against [the] plaintiff were truthful or fair, as long as they were

made in good faith."  *Melman*, 946 N.Y.S.2d at 36.  And Uttarwar points to no admissible

evidence to support any contention that Tusa's feedback was not made in good faith.  While Uttarwar does cite several emails from individuals other than Tusa praising his work, they do not create an inference that the negative performance reviews Uttarwar received were false or motivated by discriminatory animus.  *See id.* at 35 (reasoning that a plaintiff who failed to "identify any evidence suggesting the falsity of [the employer's] proffered reasons for the challenged [employment] decisions" could not survive a motion for summary judgment).  None of the highlighted evidence directly contradicts Defendants' assessment of Uttarwar's work, and none could lead a rational fact finder to conclude that the Defendants' real motivation in terminating Uttarwar was discrimination.  *See Griffin*, 103 F. Supp. 2d at 308 ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").

"At their heart, [Uttarwar's] claims reflect [his] disagreement with the Defendants' business judgments and assessments of the quality of [his] work," but such disagreement "does not support his claim of discrimination."  *Newsome v. IDB Cap. Corp.*, No. 13Civ. 6576, 2016 WL 1254393, at *22, *16 (S.D.N.Y. Mar. 28, 2016).  His belief in the unfairness of his selection for termination as part of the RIF is insufficient to establish discrimination.  *See id.; see also Ricks v. Conde Nast Publ'ns, Inc.*, 92 F. Supp. 2d 338, 347 (S.D.N.Y. 2000) ("The mere fact that an employee disagrees with h[is] employer's assessments of h[is] work . . . cannot[,] standing on its own[,] show that h[is] employer's asserted reason for termination was pretextual."), *aff'd,* 6 F. App'x 74 (2d Cir. 2001); *Brown v. Soc'y for Seaman's Child.*, 194 F. Supp. 2d 182, 191 (E.D.N.Y. 2002) ("[Discrimination claims] may not be used as a vehicle for second-guessing an employer's business judgment.").

All that remains is timing: the temporal proximity of Uttarwar's parental leave and his termination.  Regardless of whether it is sufficient for purposes of establishing a *prima facie* case (and there are reasons here for concluding that it is not, *see supra*), "temporal proximity alone is not enough to establish pretext in this Circuit." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014).  *See also Stuart*, 2015 WL 4760184, at *7 ("[T]emporal proximity, without more, is insufficient to establish pretext.").  Accordingly, summary judgment is appropriate on each of Uttarwar's discrimination claims.

## IV.    Uttarwar's Unlawful Retaliation Claims

The FMLA, NYSHRL, and NYCHRL bar employers from retaliating against employees for exercising or attempting to exercise protected rights.  *See* 29 U.S.C. § 2615(a)(1); N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code § 8-107(7).  Plaintiff's Sixth Count alleges unlawful retaliation for requesting parental leave in violation of the FMLA; his Seventh and Eighth Counts allege unlawful retaliation for complaining about discrimination in violation of the NYSHRL and NYCHRL.  For the reasons set forth below, Defendants' application for summary judgment as to all of Plaintiff's retaliation claims is **GRANTED**.

### A.  Legal Standards

Retaliation claims based on circumstantial evidence under the FMLA, the NYSHRL, and the NYCHRL are assessed under the *McDonnell Douglas* burden-shifting framework.  *See Stuart*, 2015 WL 4760184, at *5; *Baker v. MTA Bus Co.*, No. 18 Civ. 12231, 2023 WL 4896686, at *16-17 (S.D.N.Y. Aug. 1, 2023).  To establish a *prima facie* case of retaliation under the FMLA, the plaintiff must adduce evidence that would be sufficient to demonstrate that: (1) the plaintiff participated in a protected activity; (2) the defendant had knowledge of the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) there is a causal

connection between the protected activity and the adverse employment action.  *See Littlejohn*, 795 F.3d at 315-16.

The NYCHRL and post-amendment NYSHRL diverge from the federal standard with respect to the third element of a *prima facie* case of retaliation, as they do not require that the plaintiff "prove any adverse employment action; instead, [he] must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Maynard v. Montefiore Med. Ctr.*, No. 18 Civ. 8877, 2021 WL 396700, at *6 (S.D.N.Y. Feb. 4, 2021).

Should the plaintiff meet his initial burden, the burden shifts to the defendant "to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Summa*, 708 F.3d at 125.  If the defendant succeeds, the burden shifts back to the plaintiff to establish "that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.*  At this third step under the FMLA, "the presumption of retaliation arising from the establishment of the *prima facie* case drops . . . and the plaintiff must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2018).  To demonstrate "but for" causation, the plaintiff is not required to establish that "retaliation was the only cause of the employer's action . . . only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan*, 737 F.3d at 846.

Here, again, the NYCHRL and post-amendment NYSHRL diverge from the federal standard, as they "do[] not require a plaintiff to show but-for causation.  Instead, summary judgment is appropriate [under the city statute] only if the plaintiff cannot show that retaliation played any part in the employer's decision." *Baker*, 2023 WL 4896686, at *17.

### B.  Application

### i.   FMLA Retaliation Claim

Beginning with the federal claim, Uttarwar alleges that "Defendants retaliated against [him] for requesting and/or going on FMLA parental leave by terminating him."  Compl. ¶¶ 103-04.  Summary judgment, however, is appropriate for Defendants on this claim, which fails for the same reason as his related employment discrimination claims: Defendants have met their burden of establishing a legitimate, non-discriminatory reason for Uttarwar's termination, while Uttarwar has failed to meet his burden of establishing that Defendants' reason was pretextual. That is, even assuming *arguendo* that Uttarwar can establish a *prima facie* case of retaliation, there is no genuine dispute of fact that Defendants selected Uttarwar for termination as part of LAM's company-wide RIF impacting 50 other employees, because of his negative performance evaluations, *see supra*, while Uttarwar has failed to establish a genuine dispute of fact as to whether his FMLA leave was the but-for cause of his termination.

The strongest evidence Uttarwar can proffer in support of his FMLA retaliation claim is the fact that he was terminated shortly after requesting parental leave, while still on leave.[7]  *See* Opp'n 7.  "But temporal proximity, without more, is insufficient to establish pretext."  *Stuart*, 2015 WL 4760184, at \*7; *see also El Sayed v. Hilton Hotels Corp*., 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation . . . but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."), *abrogated in part on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S.

---

[7] Plaintiff requested parental leave on August 16, 2019; was approved for paid leave beginning on September 3, 2019; and was informed of his termination on September 25, 2019, while he was on paid parental leave.  Compl. ¶¶ 64-68; Rule 56.1 Statement. ¶¶ 40-41.

338 (2013).  And, beyond timing, Uttarwar can identify no evidence—circumstantial or direct—to suggest that Defendants retaliated against him for taking FMLA leave.  Thus, the record is insufficient to meet Uttarwar's burden on summary judgment.  *See Waltman v. United Servs., Inc.*, 635 F. Supp. 3d 86, 105-06 (D. Conn. 2022) ("[E]ven in . . . cases of very close temporal proximity, a plaintiff must point to some additional evidence to raise an issue of fact with respect to pretext."); *Hale*, 2023 WL 7211909, at *1 ("[T]emporal proximity between [the plaintiff's] protected activity and the [employer's] adverse actions, without more, is [] insufficient to survive summary judgment.").  Accordingly, Uttarwar's FMLA claim fails. [8]

### ii.  NYCHRL and NYSHRL Retaliation Claims

Turning next to Uttarwar's retaliation claims under the NYCHRL and, to the extent applicable, post-amendment NYSHRL,[9] Uttarwar claims that "Defendants retaliated against [him] for complaining about Defendants' discriminatory treatment by, *inter alia*, terminating him."  Compl. ¶¶ 109, 114.  Under the NYCHRL, Uttarwar may prevail on a retaliation claim if he can prove that he "took an action opposing h[is] employer's discrimination . . . and . . . as a

---

[8] Although Uttarwar has no federal claim that survives summary judgment, his claims under the NYSHRL and NYCHRL arise from the same facts and rely on the same evidence as his federal claims, "and as a result, this Court retains discretion to exercise supplemental jurisdiction over those claims."  *Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 267 (E.D.N.Y. 2009), *aff'd*, 371 F. App'x 115 (2d Cir. 2010); *see* 28 U.S.C. § 1367(a).  "Given the substantial resources already expended by the parties in developing, and the Court in reviewing, the voluminous factual record and the numerous legal arguments in this case, the Court's exercise of supplemental jurisdiction over plaintiff's pendent claims is warranted."  *Fleming*, 644 F. Supp. 2d at 267.

[9] Uttarwar's allegedly retaliatory termination occurred on September 25, 2019, after the 2019 amendments to the NYSHRL were signed into law but before each part of the omnibus bill went fully into effect.  *See McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020).  As discussed *supra*, the amendments' effective date does not matter for the purposes of this opinion, because even if the Court were to apply the NYCHRL's more lenient test to his state claims, Uttarwar's claims still fail, as even his NYCHRL claims cannot survive summary judgment.

result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112.  "New York courts have broadly interpreted the NYCHRL's retaliation provisions," such that "'opposing any practice' can include situations where a person, before the retaliatory conduct occurred, merely made clear h[is] disapproval of the defendant's discrimination by communicating to him, in substance, that []he thought his treatment of the victim was wrong." *Id.*

Uttarwar fails to allege a retaliation claim even under this lenient standard because he fails to demonstrate that he took an action opposing discrimination based on any protected status. In or around July 2019, approximately two months before his termination, Uttarwar (1) "complained verbally to Kasarabada" that his removal from the private office space he had shared with LaBadia "was the latest of a pattern of discriminatory disparate treatment," Uttarwar Decl. ¶ 92, and (2) met with Tusa and a human resources employee after his mid-year performance review to complain that "Tusa's false and baseless criticisms in [his] performance evaluation were discriminatory treatment." *Id.* ¶¶ 93-94.  Crucially, however, there is no evidence in the record that Uttarwar specifically relayed any racial-, religious-, national origin-, familial status-, or caretaker status-discrimination allegations or concerns to Defendants during his meetings with Kasarabada and Tusa.  Thus, "the evidence does not support that Plaintiff opposed or intended to oppose [discrimination] based on h[is] [race, religion, national origin, familial status, or caretaker status].  While Plaintiff did use certain buzzwords," *Robinson v. De Niro*, No. 19 Civ. 09156, 2023 WL 4862772, at *42 (S.D.N.Y. May 25, 2023)—e.g., "discrimination" and "disparate treatment"—nothing in the record suggests that Defendants were aware that Uttarwar's complaints concerned racial-, religious-, national origin-, familial status-, or caretaker status-discrimination.  *See id.*

Even under the NYCHRL, the mere facts that Uttarwar belonged to certain protected groups and also complained of discrimination are insufficient to "convert [his] complaint[s] into [] allegation[s] of discrimination" on the basis of his protected statuses.  *Id.*; *see, e.g.*,  *Talwar v. Staten Island Univ. Hosp*., No. 12 Civ. 33, 2016 WL 1298969, at *10 (E.D.N.Y. Mar. 31, 2016) (a plaintiff complaining of disparate treatment who failed to "attribute the pay disparity [at issue] to gender discrimination [in particular]" "did not engage in protected activity"); *see also Rommage v. MTA Long Island R.R*., No. 08 Civ. 836, 2010 WL 4038754, at *14 (E.D.N.Y. Sept. 30, 2010) ("The mere fact that the person or people 'making the complaints [were] African American will not convert an ordinary complaint into a complaint of racial discrimination sufficient to put the employer on notice of such discrimination.'") *aff'd*, 452 F. App'x 70 (2d Cir. 2012); *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 407 (S.D.N.Y. 2017) (where a plaintiff complained only about office conditions that the plaintiff was subjected to, the plaintiff did not complain about any protected activity); *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 363 (S.D.N.Y. 2012) ("While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition.").

Given that Uttarwar fails to adduce any evidence that he opposed discrimination on the basis of one or more of his protected statuses, he cannot raise a genuine issue of fact as to whether Defendants retaliated against him for participating in any protected activity.  *See, e.g.*, *Gioia v. Forbes Media LLC*, 501 F. App'x 52, 56 (2d Cir. 2012) (holding that plaintiffs failed to establish a genuine issue of fact regarding retaliatory intent even under the NYCHRL where plaintiffs "put forth no evidence" that participating in a protected activity "provoked animus in [an appellant's] supervisors."); *Farzan v. Wells Fargo Bank, N.A.*, 12 Civ. 1217, 2013 WL 6231615, at *28 (S.D.N.Y. Dec. 2, 2013) (granting summary judgment on NYCHRL claims because "[w]hile Farzan did tell Chan that he would file a 'discrimination complaint' when told

he would not be kept on at Wells Fargo, even in his own account of the conversation, he said

nothing beyond this one remark that in context could be 'understood to have been about race' or

other protected classifications"), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir.

2015); *see also Morgan v. NYS Att'y Gen.'s Off.*, No. 11 Civ. 9389, 2013 WL 491525, at *14

(S.D.N.Y. Feb. 8, 2013) (dismissing retaliation claim under NYCHRL despite less restrictive

standard where the plaintiff failed to adequately allege that he engaged in any protected activity).

Finally, even assuming *arguendo* that Uttarwar's complaints were a protected activity,

the temporal proximity between Uttarwar's complaints and his termination is insufficient on its

own to prove "retaliation, because it is clear that [LAM] was proceeding along lines previously

contemplated, though not yet definitively determined." *White v. Pacifica Found.*, 973 F. Supp.

2d 363, 385 (S.D.N.Y. 2013); *see supra* Section III(B)(i) (discussing recorded performance

issues and adverse job actions leading to Uttarwar's termination); *see EEOC v. Bloomberg L.P.*,

967 F. Supp. 2d 816, 862 (S.D.N.Y. 2013) (holding that even under the NYCHRL, temporal

proximity on its own may not save a plaintiff's claims). That is, given the "gradual adverse job

actions [that] began well before [Uttarwar] had ever engaged in any protected activity, an

inference of retaliation does not arise." *White*, 973 F. Supp. 2d at 385 (quoting *Slattery*, 248

F.3d at 95). As discussed *supra*, Defendants have presented "substantial evidence . . . that

legitimate, non-retaliatory reasons motivated their decision" to terminate Uttarwar for his

recorded poor work performance and as part of a company-wide RIF. *See Aiossa v. Bank of Am.,

N.A.*, 538 F. App'x 8, 10 (2d Cir. 2013). "Short of speculation, therefore, there is no evidence

that retaliation . . . played even a partial motivating role in any of the allegedly adverse actions."

*Id.*

32

The evidence favoring Defendants is such that reasonable persons could not return a verdict in Uttarwar's favor on any of his retaliation claims.  Accordingly, Uttarwar's NYCHRL and, to the extent applicable, post-amendment NYSHRL claims must be dismissed.  *See Durant v. N.Y.C. Hous. Auth.*, No. 12 Civ. 937, 2013 WL 1232501 at *11 (E.D.N.Y. Mar. 4, 2013) (finding dismissal of retaliation claim appropriate under NYCHRL where plaintiff's allegations failed to suggest discriminatory intent and "nothing in the Complaint even remotely suggest[ed] that plaintiff's report . . . involved any protected activity"), *adopted by* 2013 WL 1247516 (E.D.N.Y. Mar. 26, 2013).[10]

## V.   Uttarwar's Hostile Work Environment Claims

The NYSHRL and NYCHRL prohibit employers from harassing or subjecting employees to inferior terms, conditions, and privileges based on their membership in a protected class.  *See* N.Y. Exec. Law § 296(1); N.Y.C. Admin. Code § 8-107(1).  Plaintiff's Ninth, Tenth, Eleventh, and Twelfth Counts allege a hostile work environment for Uttarwar based on his religion, national origin, and race, in violation of the NYSHRL and NYCHRL.  For the reasons set forth below, Defendants' motion for summary judgment as to each of Uttarwar's hostile work environment claims is **GRANTED**.

---

[10] Even if Uttarwar could establish a *prima facie* case, "the documentary evidence nonetheless indicates that defendants had legitimate, non-discriminatory reasons for terminating plaintiff"— namely, his documented poor performance evaluations—and as discussed *supra*, Uttarwar fails to "expose defendants' reasons for termination as false and pretextual."  *Pierce v. HSBC Mortg. Corp.*, 798 N.Y.S.2d 6, 8 (N.Y. App. Div. 2005).

## A. Legal Standards

**NYSHRL**.[11]  "A plaintiff claiming a hostile work environment animated by discrimination in violation of the NYSHRL must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *Bilitch v. N.Y.C. Health & Hosps. Corp.*, 148 N.Y.S.3d 238, 245 (N.Y. App. Div. 2021).  To determine "whether the proffered evidence is sufficient to establish the requisite alteration of the employee's working environment, the Court considers 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Gibson v. Wyeth Pharms., Inc.*, No. 07 Civ. 946, 2011 WL 830671, at *10 (S.D.N.Y. Mar. 9, 2011) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)); *see also Banks v. General Motors, LLC*, 81 F.4th 242, 261 (2d Cir. 2023) ("[Courts] employ a totality of the circumstances approach to evaluate whether an environment is hostile and abusive.").  The test for a hostile work environment "has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Newsome*, 2016 WL 1254393, at *23.  "[I]t is axiomatic that in order to establish a . . . hostile work environment . . . a plaintiff

---

[11] There is no question that Uttarwar's hostile work environment claims accrued before the amendments to the NYSHRL were signed into law. *See supra* (discussing events pertinent to Uttarwar's hostile environment claim that each took place before August 2019).  Accordingly, the Court applies the pre-amendment NYSHRL standard here.  However, as previously stated, the distinction is irrelevant because Uttarwar's claims fail even under the NYCHRL's more lenient standards.

must demonstrate that the conduct occurred because of [his protected class]." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

**NYCHRL**.  The NYCHRL's provisions must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik*, 715 F.3d at 109.  "In determining whether a claim of hostile work environment survives summary judgment" under the NYCHRL, "the relevant consideration is whether there is a triable issue of fact as to whether the plaintiff 'has been treated less well than other employees because of'" his or her protected status. *Barounis v. N.Y.C. Police Dep't*, No. 10 Civ. 2631, 2012 WL 6194190, at *9 (S.D.N.Y. Dec. 12, 2012) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (N.Y. App. Div. 2009)).  Thus, a plaintiff need not "show 'severe and pervasive' conduct to establish a hostile work environment claim" under the City statute. *Id.*  It bears emphasizing, however, that the NYCHRL "is not a 'general civility code' and 'petty slights and trivial inconveniences' are not actionable under it." *Id.* (quoting *Williams*, 872 N.Y.S.2d at 40-41).

**B. Application**

Uttarwar alleges that "Defendants created a hostile work environment for Plaintiff, on the basis of his religion[, national origin, and race] when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment."  Compl. ¶¶ 124, 129, 138; *see also id.* ¶ 119 (laying out Plaintiff's religion-based hostile work environment claim under the NYCHRL using slightly different language).  As discussed further below, even assuming *arguendo* that Uttarwar could make out the first element of a hostile work environment claim under the NYSHRL or the NYCHRL, summary judgment is appropriate on these claims because he fails to establish a genuine dispute of fact as to the second element of a claim: namely, that any alleged hostility occurred *because* of his membership in protected classes.

**NYSHRL**.  Even considering the totality of the circumstances, Uttarwar points to nothing beyond his own conclusory allegations and speculation to show that any hostility to which he was allegedly subjected occurred "because of [his] membership in a protected class."  *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999).  As discussed *supra*, even if he could prove that Defendants treated him less well compared to LaBadia or any other non-member of his protected classes, Uttarwar points to no evidence beyond his own conclusory testimony suggesting that Defendants were motivated by discriminatory animus due to Uttarwar's religion, race, or national origin.  Uttarwar has "done little more than cite to his alleged mistreatment and ask the court to conclude that it must have been related to [his membership in a protected class]."  *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002).  Absent "evidence to link Defendants' conduct to [Uttarwar's] protected characteristics, [Uttarwar] has not raised a triable question of fact on [his] hostile work environment claim" under the NYSHRL.  *Marseille v. Mount Sinai Health Sys., Inc.*, No. 18 Civ. 12136, 2021 WL 3475620, at *11 (S.D.N.Y. Aug. 5, 2021), *aff'd sub nom. Marseille v. Mount Sinai Hosp.*, No. 21-2140, 2022 WL 14700981 (2d Cir. Oct. 26, 2022); *see Lennert-Gonzalez v. Delta Airlines, Inc*., No. 11 Civ. 1459, 2013 WL 754710, at *8 (S.D.N.Y. Feb. 28, 2013) (finding that plaintiff failed to connect employer's hostility to her Hungarian origin where she conceded that no one associated with her employer "ever made any derogatory comment about Hungarians or suggested animus towards people of Hungarian national origin"); *Sotomayor*, 862 F. Supp. 2d at 261 (granting summary judgment to employer on both discrimination and hostile work environment claims because plaintiff failed to provide evidence that any differential treatment was because of her protected characteristics).  Accordingly, Uttarwar's NYSHRL hostile work environment claim cannot survive a motion for summary judgment.

**NYCHRL**.  The absence of any evidence establishing a causal connection between Uttarwar's protected group status and his allegedly hostile work environment is also fatal to his NYCHRL claim.  "For the purposes of [the] NYCHRL, a discriminatory motive can be shown either by pleading direct evidence of discrimination, including comments indicating prejudice on account of a protected characteristic, or by pleading facts showing that comparators were treated better than the plaintiff was." *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 428 (S.D.N.Y. 2022).  Uttarwar does not attempt to allege direct evidence of discrimination. And as discussed *supra*, his allegations fail to "give rise to the inference that [Uttarwar] was treated differently [from LaBadia] because of his" protected status.  *Id.*; *see also Sotomayor*, 862 F. Supp. 2d at 261 (dismissing all hostile work environment claims because plaintiff failed to link any alleged mistreatment to discriminatory animus).  Accordingly, his NYCHRL hostile work environment claim must be dismissed.  *See Fleming*, 644 F. Supp. 2d at 269 (granting summary judgment to defendant on NYCHRL hostile work environment claim where the cited "instances of alleged discrimination . . . are facially race-neutral, and plaintiff has not established an adequate basis permitting a trier of fact to infer that the alleged discriminatory conduct was motivated by plaintiff's race"), *aff'd*, 371 F. App'x 115 (2d Cir. 2010).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** as to all counts.[12]  The Clerk of Court is respectfully requested to terminate ECF No. 48.

---

[12] Defendants have also moved for summary judgment on Uttarwar's claims for backpay and/or frontpay damages; because the Court has granted summary judgment on liability for Defendants as to all of Plaintiff's claims, it does not address Defendants' motion with respect to damages.

SO ORDERED.

Dated:  March 22, 2024

      New York, New York

 

_____

DALE E. HO

United States District Judge